Case No. 25-1073, Junuos v. IBM, Mr. Supko. Judge Calabresi is participating remotely, but you should see him on the screen in front of you. Thank you, Your Honor. Good afternoon, Your Honors. Mark Supko for the appellant, Zinuos. I'd like to reserve three minutes of my time for rebuttal, please. May it please the Court. This appeal presents a straightforward issue of copyright law. When a defendant in a copyright infringement suit does not dispute the plaintiff's ownership of the asserted copyrights or the underlying work and instead claims only to hold a non-exclusive license to the copyrights, is that dispute properly characterized as an infringement claim or an ownership claim? The district court below, sua sponte, on an argument that IBM never argued, found that Zinuos' complaint asserts a time-barred ownership claim. Well, the district court doesn't really say it is an ownership claim. She says it should be treated the way we treat ownership claims. The intuition is from the beginning of the joint defense – sorry, the joint development agreement, there was this dispute as to whether IBM came out of that joint venture with a non-exclusive license. And that is the kind of thing that it seems like should occur only once. What's wrong with that approach? Your Honor, the dispute below between IBM and SCO was it was a misappropriation claim that was asserted by SCO. IBM asserted a licensing defense based on a non-exclusive license. That was the dispute there. They weren't challenging SCO's ownership of the copyrights that Zinuos ultimately acquired. It was just – Can I ask you this question? So let's say that there isn't this complication about the sale of the copyright. Let's say we just have one party. It's just SCO. If SCO had settled the Utah litigation the way it played out, and then 10 years later it came back and wanted to sue IBM again for infringement, would we let that case proceed? You would not, Your Honor. The reason being SCO would have released the claim that they owned to copyright infringement. And that's the dividing line here. So then what you're saying is that actually the infringement claim would not re-accrue because they released all claims they had at that time, which did implicate whether IBM came out of the joint defense agreement with a non-exclusive license. And we wouldn't let SCO come along later and say, well, technically infringement claims re-accrue every time there's a new instance of copying, and therefore I can bring this litigation again. So if that's what we would do if there's one party, why doesn't the same result obtain when it's just a successor copyright holder but it's the same copyright? Well, certainly, Your Honor, we'd have to look at the exact verbiage of the release that was given at the conclusion of the SCO and IBM case. But if they said we release you for all times, sure, there's no claim that could be brought there. But as long as SCO- Yeah, but I mean the release is only about the claims they had at the time, right? And so if we said that infringement claims accrue, right? So they released IBM from any and all claims concerning, related to, arising out of, or arising from the Utah litigation, right? But if we thought that infringement claims accrue at the time of copying, it might be that if IBM then uses the code again at a later time, there's a new infringement claim. But I think you share my intuition that we probably wouldn't let them sue again because it would be related to the Utah litigation. Well, I would disagree respectfully with Your Honor. Our copyright infringement claim is not related to the Utah litigation. We don't have to prove anything about Project Monterey to establish our copyright infringement claim. We don't have to prove anything about the Utah litigation. All we have to prove is we- I mean, if the Utah litigation had resulted in an express holding from a court that IBM obtained an unexclusive license out of the joint development agreement, wouldn't that resolve your claim as well? Very different situation, Your Honor, yes. Had IBM- Just to say it's not really true that your claim has nothing to do with what was at stake in the Utah litigation because that issue would resolve your claim. Had IBM acquired a non-exclusive license through the Utah litigation, our acquisitions, Inouye's acquisition of the copyrights would have been encumbered by that license in all likelihood. I think Judge Calabresi is talking, but you're on mute, so we're going to suggest that you unmute Judge Calabresi. Judge Calabresi, we can't hear you. All right. Can you hear me now? Yes, we can. All right, go ahead. Yes, Your Honor. How do you draw a line between what is a license that is just a license on the copyright and what is just an extension of ownership? I mean, it's a close case, but you've said some things would be on the ownership line and this is on the other. Where do you draw this line? Well, Section 101 draws the line for us, Your Honor. Section 101 of the Copyright Act expressly excludes from ownership the grant of a non-exclusive license. If it's an exclusive license that's akin to an assignment, that's an ownership issue. If there is a challenge to the plaintiff's copyright ownership, that's an ownership issue. If there's a challenge to authorship over the copyrighted work, that's a challenge to ownership. Every single one of the cases that were cited either by IBM or by Zinus where an ownership dispute was found involved a challenge to the copyrights or the copyrighted work. Not a single case that was cited in this appeal, not a single reported decision anywhere in the country that we've been able to find, found an ownership dispute based solely on the assertion of a non-exclusive license. So Section 101 draws that line for us. Okay. So, you know, you said if a court had decided in mutual litigation that IBM had a non-exclusive license, that would resolve your claims. If there was a settlement between SCO and IBM in which SCO expressly agreed that IBM had obtained a non-exclusive license, would that also resolve your claims? It would potentially resolve the claims. Most likely our acquisition of the copyrights would have been encumbered by that license. But that's not the situation that we have here. The settlement between SCO and IBM was basically a walk away. SCO released their claim for misappropriation. IBM dropped their assertion of a licensed defense. Right, but I think, you know, you said before that if it were SCO that's coming back later and trying to bring an infringement claim, we wouldn't let it proceed because they had the earlier settlement of litigation and released IBM for those claims. And the subsequent infringement claim is at least related to the earlier claims. And if you're acknowledging that your copyright is encumbered by the conduct of SCO vis-a-vis IBM, then why shouldn't we treat you as if, you know, in the same way that we would treat SCO coming back with a new lawsuit? Because Xenius' conduct was not encumbered by the conduct of SCO. It's not our claim for infringement that relates to the relationship between SCO and IBM. It's IBM's defense in this case. They're asserting, and they've only ever asserted, that they hold a non-exclusive license to these copyrights. They have not proven that. The district court granted summary judgment before any discovery was taken, before they even answered the complaint. So they have never had to prove the affirmative defense that they hold a non-exclusive license. And the case law is uniform. An assertion of a non-exclusive license does not create an ownership challenge. So if I agree with you that it doesn't create an ownership right, you know, the logic of the distinction we drew between ownership and infringement is a party that understands that at the beginning of the creation of the work, there was a dispute over ownership, and the party decides not to mitigate it at that point. But understanding that the opposing party claims ownership and they don't litigate it, and then later on there's an additional use of the work. They're going to come up with an infringement claim. We say we don't let them come back later when they sat on their rights because they could have, right? I agree that calling a non-exclusive license ownership is not correct, but why doesn't the same logic apply? That if the copyright owner understands that the other party believes they obtained a non-exclusive license out of this earlier joint venture, they have to bring the claim at that time, right? But your claim does not involve anything about, you know, the particular copying and use of the code. It all hinges on whether IBM actually obtained a non-exclusive license to begin with or not, right? That's something that should have been litigated at the time that that controversy arose, isn't it? I disagree with that, Your Honor. What we have here is not a situation, and I believe I'm into my review. That's fine. Go ahead. You'll have the three minutes. There was never a challenge to ownership in the FCO-IBM case. It was just an assertion of a non-exclusive license as a defense. There was never a resolution of that. So that issue – But it was disputed. So if Judge Menasche is right that – because the logic does sort of make sense that this is a one-time thing, whether or not you effectively obtained a non-exclusive license, like whether or not you obtained ownership is a thing that happens at a given time. So assuming for the sake of argument that we were going to apply an ownership standard of a single-date accrual, would – and usually the language is, right, would a reasonably diligent plaintiff – so would Zinus, having been reasonably diligent, have known that the question of whether IBM obtained a non-exclusive license was in dispute? And it sounds like you're saying everybody knew it was in dispute. It just didn't get resolved. That's correct, Your Honor. So are we just going with the – no doubt that our case law says non-exclusive license, and I think the statute says non-exclusive license is not ownership, right? But if the logic – is that judge-made law that says that this is a – that it accrues on the one-time basis for ownership and as it occurs for infringement? It's judge-made law, right? That is judge-made law, Your Honor. So does it make – if we are deciding where a genuinely disputed licensing issue should fall, why should we put it with infringement rather than with ownership? Well, first off, because every case that's dealt with this issue of whether assertion of a non-exclusive license presents an infringement or an ownership issue has come down on infringement. But I'm saying let's not go try to make it one of those. It's which one is it more like for purposes of accrual? I would say it's more like an infringement issue because we're talking about a non-exclusive license here, and by statute, non-exclusive license doesn't carry an ownership issue. IBM had a very easy way to get out of this problem. They could have litigated that case to a resolution, to a judgment that said they hold a non-exclusive license. That would have encumbered our acquisition of the copyrights, but they didn't do that. It was a walk-away. That issue was never resolved. Zinnewas had no right to come into the SCO-IBM case and object to that particular issue. The issue that was in play in that case had to do with the rights that SCO had when they owned the copyright. So Zinnewas' rights only accrued after they purchased the copyrights, and the law is clear there that SCO couldn't retain the right to sue on the copyrights post-sale. That was solely Zinnewas' fault. So even though they purported to retain the right to sue, you think that was invalid? They purported to retain the right to sue on the claims that they owned. I'm not suggesting that's invalid. But the claims that they owned stopped at the time that they sold those copyrights to Zinnewas. Section 501- So you made an argument earlier that your claim is unrelated to the Utah litigation. So I guess you would say even if the settlement or release of claims did apply to you, it wouldn't cover the claim you're making now. I guess, assuming that, putting that aside, just in terms of whether it could apply to you, aren't you in privity with SCO? Aren't you, like, the successor or interest, the owner of the copyright? Not at all, Your Honor. What is that? Section 501-B says that a party, a copyright owner, can only sue for infringement that occurred while they owned the copyrights. And in this situation, we are suing for infringement that occurred 2018 and beyond. Right. No, that's right. You're suing for infringement that occurred after you owned the copyright. But to the extent that that claim is related to the earlier controversy and therefore is covered by the release of claims, the question is whether that release would apply to you. SCO had no legal ability to release a claim for copyright infringement that occurred after they sold the copyrights. That would mean they were retaining the right to, a bare right to sue for infringement on a copyright that they no longer owned, on infringements that occurred after they no longer owned the copyright. Couldn't you flip that on its head and say it had no right to sell a copyright unencumbered by the license? Once the, like, I mean, you can read that either way, right? If there was a license that existed, Your Honor, arguably SCO would not have been able to sell the copyrights to Zinus unencumbered by that license. But there was no license. There never was a license. And IBM has never had to prove that a non-exclusive license existed. The court granted summary judgment before they even answered the complaint. Okay, thank you very much, Mr. Subko, you've been a photographer, but also we'll hear from you again. But let's turn to the athlete, Mr. Marriott. Thank you, Your Honors. May it please the court, this case concerns a software development initiative known as Project Monterey. Project Monterey involved IBM and a company called the Santa Cruz Operation, Inc., and it was governed by a joint development agreement, or JDA. Project Monterey has now been the subject of litigation for just over 23 years. Zinus had nothing whatever to do, Your Honors, with the joint development agreement or with Project Monterey, but it purports to have acquired rights in bankruptcy from a company called SCO, or S-C-O, which in turn purports to have acquired rights from a company called Santa Cruz. There are, we think, Your Honors, several independent reasons why this court should affirm. I'd like, if I may, to begin with those not directly addressed by the district court. Yeah, but wait a second. If we go on these other things, the district court didn't discuss them, and it might be advantageous to let the district court discuss. There are many grounds on which IBM might win this case. I think there are, but I don't think you should be arguing to us the grounds that the district court didn't give. Let's stick to what the district court said. Okay, Your Honor. I will address what the district court did. The district court found here that the Zinus claim is a claim that ought to be characterized as an ownership claim for purposes of accrual. So you agree that that's what the district court said? This should be characterized as an ownership claim? I do, Your Honor. Okay. Well, is it an ownership claim, or it's like or analogous to an ownership claim? I think she said that, Your Honor, but I think as a practical matter she treated it as if it were an ownership claim, and I think properly so. She did acknowledge that we don't have a Well, how can that be proper under the statutory language? A non-exclusive license, which is the only thing IBM could have had, isn't ownership. Because, Your Honor, the statute in the definition to which Your Honor refers is about the transfer of ownership, and I freely acknowledge that the transfer of ownership does not Now look. Now look. The problem in this case is that, as Judge Mary pointed out before, there was an individual action which could have been sued on at that time, and that suggests that that should be the time rather than a later one, and that cuts very much in your favor. On the other hand, there is also the whole of the cases that say that non-exclusive licenses are not ownership, but copyright, and in the face of that, somebody might well say, I don't need to sue because this is a non-exclusive license, and therefore it is a copyright thing and comes later. Now that's a problem for us, that on the one hand, it might make sense to say the time has passed. On the other hand, in terms of people's expectations, it might well be the other way. So how do you get us out of that? Your Honor, thank you. We get out of that because the question of whether the claim ought to be treated as an ownership claim for purposes of accrual doesn't depend solely on the existence of the non-exclusive license here. It is a multifaceted thing. It depends upon the fact that in this case, the nature, the scope, the extent of the alleged copying wasn't in dispute. IBM has freely admitted since 2001 when it took this code and put it in its own separate product that it was doing so. And in fact, Santa Cruz, its partner — But you're saying that even though this was a suespant earlier thing, we can say that the facts are so clear that this was in fact an ownership-like claim that the fact that there was a non-exclusive license is something we should ignore. Your Honor, I don't think you need to ignore it. I just don't think it's dispositive. I think there was a non-exclusive license here, but there was also no real question about the nature and extent of copying. IBM acknowledged that it did that. There is a dispute here, an important dispute here, as between whether Zinus or SCO owns the rights in question. There is a joint development agreement here, which has been referenced in the prior argument, that can't be ignored. That joint development agreement is crystal clear, that any claim related to an alleged breach of the joint development agreement has to be brought within two years. The parties to the JDA expressly agreed, right, to a different form of accrual than otherwise would apply. So why is this claim related to the joint development agreement? Your Honor, respectfully, it is related because in the very first paragraphs of the complaint, what Zinus says is that this is a case in which IBM allegedly stole code from Project Monterey. And when they get specific about it, and they do that at Joint Appendix 13, what they say is that this is a case in which IBM took the code, right, that was intended to be used solely for purposes of the joint development product, the IA-64 product, and they used it in their own proprietary product. That's the allegation. And they say that we did that without a license. And if we did that without a license, as they say, it is a plain violation of the joint development agreement. The joint development agreement, Your Honors, says quite expressly that the code provided can be used only for purposes of the development of this IA-64 product unless there is a separate license. And it does that, Your Honors, at page Joint Appendix 608 and Joint Appendix 644. So the exact thing which they say we supposedly did wrong is plainly a violation of the joint development agreement. And what they say in their papers is, ah, that's different because that's just not satisfying a conditioned precedent to a license. And that respectfully is wrong. It is certainly the case that language in a contract can simply be a conditioned precedent to a license. The language in this contract is different from that. Do you think it would be a breach of the joint development agreement for IBM to take a non-exclusive license that isn't authorized by the agreement? If by that you mean to— That's the question, right? So you're saying their infringement claim really is about a breach of the joint development agreement. It absolutely is. They say we took, again, if you look at those pages, the code is to be used solely for purposes, they say, of this joint development product unless we get this separate license which they contend we didn't get. But can't something be both? It can. Is it possible to— It can. It could also be an infringement claim that IBM is openly using a copyrighted code or I'm not sure exactly what we want to call it, but copyrighted material for which it lacks a license. That's an infringement claim. It is possible that a certain type of conduct can both be infringement and it can be a breach of conduct. But what's relevant here, Your Honor, I submit, is that if you're asking the question, as I was trying to answer, does this relate to a breach of the JDA? It unquestionably does because it is simply a matter of comparing the first paragraphs of the complaint, JDA 13, with JDA 608 and 644. And the thing they allege is— What's the significance of that? So how do we—you know, Mr. Soto just told me that he doesn't think his client is bound by the joint defense— by the release of claims. Well— But you're saying he is bound by the joint defense agreement that establishes the statute of limitations. I'm saying he's bound by both, Your Honor. They purport to be a successor in interest to Santa Cruz. If they are a successor in interest to Santa Cruz, they are bound in the same way Santa Cruz would be bound. And you can see that at 17 U.S.C. 205e. You can see that in this Court's decision in the Hasbro case. And they admit, effectively, in their own papers at page 39 of the opening brief— Well, the argument worked this way. Why is it that we've said that whatever you have an infringement claim, it accrues with every instance of copying? The fact—the claim that they have—that IBM has a non-exclusive license is a defense to the allocation of infringement. It's true. Their defense depends on something that happened earlier in time. But there is a new claim for infringement at a later time. And no court has ever decided the question of whether IBM actually has a non-exclusive license. Well, it's true that no court has decided that question. It is true that that question of whether IBM had a license was one reserved to SCO. It did not transfer that to Xenus. I don't think there's any dispute about that. It reserved that to itself. It continued to litigate with IBM for the next 10 years. But why isn't it the way—so I think Mr. Sisco agreed with me that if, in fact, the earlier litigation in Utah had resulted in a court decision that said IBM did obtain a non-exclusive license out of the joint development agreement, then that would resolve the current claims. But it didn't, right? So why isn't it the case that SCO could have litigated on that question and that it just never was resolved? And that means that IBM hasn't ever really established its defense. You're right. I would respectfully submit that it has been resolved. There is a release. There was not a judgment by a judge. Well, I mean, let's think—the question that I asked earlier was what if there isn't a successor to the copyright? What if it is just SCO? So SCO brings the Utah litigation and then does its settlement and release of claims, and then SCO comes back 10 years later and says, well, you're still using our code. We settled all the claims we had at the earlier time, but we have a new infringement claim because you're still using it. There's another instance of copying. Why wouldn't they be allowed to pursue that claim at that time? What would the arguments be? Well, there would be twofold. They would be, one, that it would be foreclosed by the release. The release here is extraordinarily broad. And, two, Your Honor, it would be barred by the joint development agreement itself by which the parties agreed, their successor, their predecessor in interest. But both the release of the joint development agreement require understanding the later infringement claim to be related to the joint development agreement or to the Utah litigation, right? So all of these arguments depend on the idea that this is really not an infringement claim. It's not something that arises with every instance of copying. It is something about a one-time dispute.  And that is why I think it's best characterized under the district court's analysis as a claim that is an ownership claim for purposes of accrual. Parties are free to come to an agreement as to a different statutory period and as to a different form and mechanism for accrual. And they did that here. They did that in the joint development agreement. And having done that in the joint development agreement, Zinus, as the purported successor of Santa Cruz, is bound by that. Your Honor, I see my time has expired. All right. Well, thank you very much, Mr. Merritt. We'll turn back to Mr. Subko on rebuttal. Thank you. Thank you, Your Honors. Picking up on the point about Zinus' copyright infringement claim depending on a breach or relating to a breach of the joint development agreement, that's just not the case. We don't have to prove that IBM breached the joint development agreement in order to establish copyright infringement. Do you think it would be a breach of the joint development agreement for IBM to take the code and incorporate it, you know, as if it had a non-exclusive license, if, in fact, the joint development agreement didn't grant it that non-exclusive license? Potentially could be a breach of the joint development agreement, Your Honor, but it's an infringement claim. If that infringement is in substance a claim for breach of the joint development agreement, why shouldn't it be the kind of claim that accrues only once at the time of the breach? Well, I would disagree that in substance it's a claim for breach of the joint development agreement. Under the Sohn decision that we cited, what we have here in the joint development agreement, there were conditions preceding that IBM had to satisfy in order to get that non-exclusive license, that continuing non-exclusive license. They weren't in covenants. But why isn't the failure to do both a breach of that agreement, at least? I'm sorry, Your Honor, I didn't hear the beginning of that. Why isn't the failure to do these conditions preceding, in fact, a breach of the agreement? The reason it's not a breach, Your Honor, is IBM wasn't obligated to do that. They didn't have to perform those conditions to get that license if they didn't want the license. It was only if they wanted that continuing license. So if I have a contract with you that says you're going to advance me $1,000, you know, and I'm going to do A, B, and C on your behalf, and if I do it, I get to keep $1,000. Otherwise, I need to return it. If I don't do A, B, and C and I keep the money, wouldn't I have breached an agreement with you? Potentially, Your Honor. I guess we'd have to look at the terms of the agreement. Okay, so your allegation is that that's what IBM did, right? I'm sorry? Your allegation is that that's what IBM did. They had license to use the code only during the joint development agreement. They could keep the license on an ongoing basis if they satisfied certain conditions. They did not satisfy those conditions, and yet they retained the license and the code, right? IBM's allegation in this case is that they did satisfy those conditions. No, I understand the dispute, right? But your contention is that they didn't satisfy them, and that would be a breach of the agreement. Potentially a breach of the agreement, but also creates an infringement issue, Your Honor. This is a defense that they're asserting to our infringement claim. Okay, but if you could characterize it as an infringement issue, but if you could also characterize it as a breach of the agreement, and the agreement itself says that all claims related to the breach need to be brought within two years, why shouldn't we enforce that agreement? Because I disagree that it's properly characterized as a breach of that agreement. These are conditions preceding. They weren't covenants that IBM made. Conditions preceding to satisfy that license under SOM, that creates an infringement issue. It doesn't create an ownership issue. And going back to what the district court actually found here, the district court stands alone in finding that there was an ownership dispute as a result of IBM asserting that they have a non-exclusive license. There's not another case in the country that found that. There's not another case in the country that applied the Walker analysis in the way that the district court did, reframing it to get rid of all references to ownership and replacing that with asserting rights. And that was based on a quote that appeared in the Roberts case that goes back to the Stone case. It wasn't just asserting any rights, any right to use. What the Stone case was talking about was asserting renewal rights, an heir who didn't know she was an heir. When did she have a claim for ownership of renewal rights? Just like every other case that found an ownership claim in an ownership infringement analysis, that involved ownership of the copyrights, either ownership of the copyrights or ownership of the copyrighted work. The district court's decision here stands alone in the country. Okay. Thank you very much, Mr. Subko. The case is submitted. Thank you, Your Honor.